# No. 23-132

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

JONATHAN L. ASHLEY, III, JONATHAN LEIGH ASHLEY, IV, JORDAN T. ASHLEY, TAMMIE MARIA ASHLEY, CHERYL ATWELL, ERIN RIEDEL, ANGELA KAHLER, PAMELA E. ALEXANDER BELL, JAMES BELL, ANDREA ROE, FEDERICK C. BENSON, BEVERLY MILLS, MAGGIE MAE BILYEU, KATHERINE ABREU-BORDER, MARY BORDER, DELAYNIE K. PEEK, FRANCISCO JAVIER BRISENO GUTIERREZ, LUIS BRISENO, MARISSA BROWN, ARIELL S. TAYLOR, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CHRISTOPHER L. BROWN, WILLIAM A. BURLEY, MICHAEL COLLINS, DAN OLMSTEAD, TAMMY OLMSTEAD, AUGUST WILDMAN, CORBIN CABRERA, *(caption continued on inside cover)*

Appeal from the United States District Court for the
Eastern District of New York
Case No. 21-cv-4400 – Judge Hector Gonzalez
U.S. Magistrate Judge Robert M. Levy

## BRIEF OF *AMICI CURIAE* PLAINTIFFS IN *BONACASA v. STANDARD CHARTERED PLC* IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

Andrianna D. Kastanek
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60653
(312) 222-9350
akastanek@jenner.com

Lee Wolosky
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
lwolosky@jenner.com

*Counsel for Amici Curiae*

DANIEL MATIAS CABRERA, GILLIAN LEIGH CABRERA, M. G. C., BY AND THROUGH HIS
NEXT FRIEND, AUGUST WILDMAN, R. X. C., BY AND THROUGH HIS NEXT FRIEND,
AUGUST WILDMAN, ROBERT CABRERA, RONALD PAUL HOPKINS, SUZANNE RENAE
MARTINEZ, J D PROSSER, GLORIA DIANE TRELFA, CYNTHIA CAROL CAMPBELL,
RAMIRO CARDOZA, JR., RAMIRO CARDOZA, SR., MARIA CARDOZA, BRITTANI MARIE
CARNER, T. M. C., BY AND THROUGH HIS NEXT FRIEND, TIMOTHY NORMAN CARNER,
TIMOTHY NORMAN CARNER, CORDARO DEVONE CLARK, CORTEIZE CLARK, KEYKO
D. CLARK, PRECIOUS CLARK, CLEVELAND DAVIS, APRIL CLEARY, JONATHAN
CLEARY, B. C., BY AND THROUGH HIS NEXT FRIEND HOLLY CONRAD, HOLLY CONRAD,
PEYTON COONEY, A. C., BY AND THROUGH HIS NEXT FRIEND, NICOLE COX, BRENNAN
COX, H. C., BY AND THROUGH HER NEXT FRIEND, NICOLE COX, NICOLE COX, ROSS
COX, ANTHONY D'AUGUSTINE, JENNIFER D'AUGUSTINE, NICOLE D'AUGUSTINE,
PATRICIA D'AUGUSTINE, MICHELE KULESA, BRENDA DAEHLING, KAYLA MARIE
DAEHLING, KIRK W DAEHLING, HEATHER FRANCES DANIELS, JAMES L. DANIELS,
LUCAS DANIELS, SOPHIE DANIELS, JUDITH SARA DARROUGH, ROBERT CHARLES
DARROUGH, C. D., BY AND THROUGH HIS NEXT FRIEND, HELENA DAVIS, HELENA
DAVIS, JOSEPH ROGER DESLAURIERS, ALBERTO D. DIAZ, ANTHONY M. DIAZ,
FRANCES P. DIAZ, KAYLA N. DIAZ, MATTHEW J. DIAZ, MAXIMO DIAZ, N.J.A.D., BY
AND THROUGH HIS NEXT FRIEND, KAYLA N. DIAZ, N. J. D., BY AND THROUGH HER
NEXT FRIEND, KAYLA N. DIAZ, B. C. D., BY AND THROUGH HIS NEXT FRIEND, KELLI
DODGE, KELLI DODGE, P. A. D., BY AND THROUGH HER NEXT FRIEND, KELLI DODGE,
PHOUTHASITH DOUANGDARA, ROBERT ALEXANDER DOVE, SARAH PETERS-DUARTE,
INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF CURTIS JOSPEH DUARTE, JOSEPH
DUARTE, JOY COY, ROBERT L. DUNNING, INDIVIDUALLY AND ON BEHALF OF THE
ESTATE OF TOMOE DUNNING, CAREY GREGGORY DUVAL, ERICH MARTIN ELLIS,
JAMES RUSSELL ELLIS, JAMES EARL ELLIS, JOELLE R. ELLIS, JOHN F. ELLIS, VANESSA
MARIE ANZURES, BRIAN EDWARD ELLIS, JULIE ANN ELLIS, VICTOR RAYMOND ELLIS,
CATHERINE ELM BOATWRIGHT, MARGARET ELM CAMPBELL, DENNIS JOHN ELM,
DONNA LEE ELM, MATTHEW ELM, CHRISTINE RANGEL, CHARLES ESSEX, MARION
RUTH HOPKINS, JOHN L. FANT, STEPHANIE JANE FISHER, C. F., BY AND THROUGH HIS
NEXT FRIEND, STEPHANIE JANE FISHER, K. F., BY AND THROUGH HIS NEXT FRIEND,
STEPHANIE JANE FISHER, THOMAS ANTHONY FOGARTY, ERICA FOX, MICHAEL
FESTUS FOX, JASON WAYNE GIBSON, Q. G., BY AND THROUGH HIS NEXT FRIEND,
KARA GIBSON, KARA GIBSON, JESSICA ANNE BENSON, JOANNA GILBERT, EMMITT
DWAYNE BURNS, JANICE CARUSO, PAUL EDWARD GOINS, III, PATRICIA GOINS, DANA
RAINEY, L. C. D., BY AND THROUGH HIS NEXT FRIEND BRIDGETT L. DEHOFF, KIRK
ANDREW GOLLNITZ, TYLER GOLLNITZ, CEDRIC DONSHAE GORDON, SR., CEDRIC
FRANK GORDON, ADRIAN KIE-ALUN SHERROD, CONCHETTA MICHELL DIAZ, KRISTIN
CARACCIOLO, SUNI CHABROW, PAIGE ERLANGER, COLBY ANDERSON, HAYLEY
ANDERSON, GLENDA GREEN, JULIE GREEN, TRAVIS SCOTT GREEN, CAROL GRIFFIN,

DANIEL GRIFFIN, MATT GRIFFIN, SHAWN PATRICK GRIFFIN, JERRY HARDISON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF TERESA HARDISON, SHEILA RISTAINO, JUSTINA HARDISON, HOLLY MARIE HARPE, ANGELA MARIE HARPER, BRIAN HARPER, JOSEPH TROY HUSLEY, JR., ADAM SAMUEL HARTSWICK, ALEX HENIGAN, KEVIN HONAKER, LARRY D. HORNS, TAMARA ELAINE HORNS, TIFFANY LOUISE HORNS, BENJAMIN HORSLEY, SONGMI KIETZMANN, KATHLEEN LYNN ALEXANDER, DANIEL OWEN HUGHES, PATRICIA SHIRLEY HUGHES, KRISTINE ANNE ZITNY, BETTY DARLENE BLACK, JOEY J. HUNTER, II, JOEY J. HUNTER, SR., ERIC M. HUNTER, KENNA HUNTER, NICHOLAS WALTER ROBINSON, IV, MICHAEL IUBELT, SHELBY IUBELT, V. I., BY AND THROUGH HER NEXT FRIEND SHELBY IUBELT, CHARLOTTE LOQUASTO, J. A. L., BY AND THROUGH HIS NEXT FRIEND, CHARLOTTE LOQUASTO, BRADLEY DYLAN IVANCHAN, ADAM MATTHEW JAYNE, AYZIA J. JAYNE, PAUL ELMER JAYNE, G. A. S., BY AND THROUGH HIS NEXT FRIEND, KENT ALAN SKEENS, KENT ALAN SKEENS, SHERRY A. SKEENS, TRENT LORNE SKEENS, Z. R. S., BY AND THROUGH HER NEXT FRIEND, KENT ALAN SKEENS, BRIAN CHRISTOPHER JERGENS, TERENCE LONNIE JONES, JOHN C. MCCARTHY, ALISON R. POHN, KEVIN KING, STEPHANIE ANN MILLER, EDWARD KLEIN, ABBY KNAPP-MORRIS, K.K., BY AND THROUGH HER NEXT FRIEND, ABBY KNAPP-MORRIS, BRANDON KORONA, BRIAN LAMBKA, JORDAN LAMBKA, DOUGLAS A. LANDPHAIR, JEAN S. LANDPHAIR, MEREDITH LANDPHAIR, B.R.L., BY AND THROUGH HER NEXT FRIEND, MIRANDA LANDRUM, LONDON JACINDA BELEL, G.B.L., BY AND THROUGH HIS NEXT FRIEND MIRANDA LANDRUM, JAMES R. LANDRUM, JANET LANDRUM, MIRANDA LANDRUM, HOLLY LAU ABRAHAM, LEROY WINGKIT LAU, JR., ALEXANDER LAU, DAVID WILLIAM HAALILIO LAU, HAMIDE LAU, K.L., BY AND THROUGH HIS NEXT FRIEND, DAVID WILLIAM HAALILIO LAU, M.L., BY AND THROUGH HER NEXT FRIEND, DAVID WILLIAM HAALILIO LAU, VIVIAN PERRY, MICHELLE LEE RAUSCHENBERGER, JAMMIE JOANN SMITH, ERIC DANIEL LUND, KARYN STONE MARTA, LAWRENCE MARTA, TAYLOR MARTA, BOB SURPRENANT, KRISTIE SURPRENANT, BRIAN M. MARTIN, CATHERINE G. MARTIN, ELIZABETH A. MARTIN, JULIE K. MARTIN, JOSE LUIS MARTINEZ HERNANDEZ, LISETH MARTINEZ-ARELLANO, CHESTER R. MCBRIDE, SR., ANNIE L. MCBRIDE, ALEXANDRA DORIAN MCCLINTOCK, D.C.M., BY AND THROUGH HIS NEXT FRIEND, ALEXANDRA DORIAN MCCLINTOCK, GEORGE B. MCCLINTOCK, JOYCE PATRICIA PAULSEN, KATHLEEN MCEVOY, MICHELLE ROSE MCEVOY, PATRICK CHARLES MCEVOY, JANICE H. PROCTOR, LUANN VARNEY, SHANNON K. MCNULTY, JOHN MEANS, KIMBERLY METCALF, CLARENCE JOSEPH METCALF, JEREMY J. METZGER, THERESA KARLSON, ANNA MARIA BANZER, ANDREA KESSLER, SOFIA KESSLER, ERIC MORGADO, JOSE ALBERTO MORGADO, CONNOR ALEXIAN PLADECK-MORGADO, ANNA MORGAN, JEDIDIAH DANIEL MORGAN, MIRIAM A. MULLEN, NANCY MARIE MULLEN, WILLIAM J. MULLEN, CATHERINE MULLINS, THOMAS MULLINS, BETHANY ROSE MULLINS RANDALL, CHET MURACH, WILLIAM ANTHONY

MURACH, WILLIAM R. NEVINS, DERRICK ANTHONY DAVIS, DONALD EDWARD NEWMAN, SR., AMANDA NEWMAN, MARY R. HAMMERBACHER-NICHOLS, BRANDON NICHOLS, CYNTHIA NICHOLS, DOUGLAS NICHOLS, MONTE DOUGLAS NICHOLS, NICOLE ANN ROBLES, BRUCE K. NICHOLS, JEANNE M. NICHOLS, M.G.N., BY AND THROUGH HER NEXT FRIEND, BRUCE K. NICHOLS, ADOLF OLIVAS, CHRISTA L. OSBORN, CREIGHTON DAVID OSBORN, KADE M. OSBORN, KATLYN M. OSBORN, JULIA OTT, NANCY R. WILSON, ROBIN ELIZABETH AKERS, TRACY ANNE HERRING, ADAN PEREZ, ANTHONY PEREZ, DEBRA ANN PEREZ, NICHOLAS JOSEPH FRANCIS PEREZ, B.M., BY AND THROUGH HIS NEXT FRIEND, DARILYN PEREZ, RICARDO J. PEREZ-RAMOS, DARILYN PEREZ, A. P., BY AND THROUGH HER NEXT FRIEND, DARILYN PEREZ, S.P., BY AND THROUGH HER NEXT FRIEND, RICARDO J. PEREZ-RAMOS, G. W.P. , BY AND THROUGH HIS NEXT FRIEND, JULIANNE GOOD PERRY, JULIANNE GOOD PERRY, KATHLEEN PERRY, L.R.P., BY AND THROUGH HER NEXT FRIEND, JULIANNE GOOD PERRY, STEWART LAMAR PERRY, ASHLEY PETERS, DEBORAH JEAN PETERS, DENNIS W PETERS, G.R.P., BY AND THROUGH HIS NEXT FRIEND, ASHLEY PETERS, CHRISTINE H. PHILIPS, S.N.P., BY AND THROUGH HER NEXT FRIEND, CHRISTINE H. PHILLIPS, BETHANY ROSE WESLEY, JOHN TERRY PITTMAN, SR., IDA BELLE PITTMAN, JACOB RICHARD PRESCOTT, JOSHUA MICHAEL PRESCOTT, TRACEY MARIE PRESCOTT, JUDITH L. ASHLEY, LOUISE P. CONLON, MEGHAN JANET HOLLINGSWORTH, MARYJANE G. MEDEIROS, SARAH TIFFANY PETERSON, BRIAN PROVOST, GAIL PROVOST, GERTRUDE PROVOST, JOHN A. PROVOST, LOUIS PROVOST, PAUL PROVOST, SCOTT PETER PROVOST, LONA L. BOSELY, ANDREA N. RATZLAFF, HANNAH MASON, SUMMER REEVES DUNN, CHARLOTTE ANN REEVES, JENNIFER KATHERINE REEVES, VICTORIA JANE REEVES, JOYCE ANN TULLOCH, MALLORY TAYLOR WILLIAMS, SCOTT REGELIN, SHIRENE REGELIN, CASSIE MARIE RICHARDSON, CYNTHIA JEFFRIES RICHMOND, MICHELLE RILEY, RODNEY RILEY, NATHAN JEREMY RIMPF, CHRISTOPHER POWERS, RANDY RISTAU, SUZANNE RISTAU, DANIEL MARK ROBINSON, RODOLFO RODRIGUEZ, SR., K. R., BY AND THROUGH HER NEXT FRIEND, MELISSA RODRIGUEZ, MELISSA RODRIGUEZ, BARBARA A. ROLAND, ERICA M. ROLAND, MARK K. ROLAND, ANGEL R. ROLDAN, LIESELOTTE R. ROLDAN, MATTHIAS P. ROLDAN, SAMANTHA G. ROLDAN, CHRISTOPHER J. ROSEBROCK, ALEX JASON ROZANSKI, JOSHUA ANTHONY SAMS, COLLEEN WHIPPLE, A. L. S., BY AND THROUGH HIS NEXT FRIEND, NATALIE SCHMIDT, BRANDON TYLER SCHMIDT, LEEANN SCHMIDT, NATALIE SCHMIDT, PHILLIP J. SCHMIDT, SHEESHTA MARIE PERRY, A.M.S., BY AND THROUGH HER NEXT FRIEND, TAMMIE SUE SCHOONHOVEN, CHRISTOPHER SCOTT SCHOONHOVEN, A.R.S., BY AND THROUGH HER NEXT FRIEND, TAMMIE SUE SCHOONHOVEN, DEBORAH FERN SCHOONHOVEN, TAMMIE SUE SCHOONHOVEN, SARAH MELINDA SCHWALLIE, SAMUEL ROBERT SHOCKLEY, SUZI L. FERNANDEZ, SPENSER J. FERNANDEZ, JORDAN L. SIBLEY, LOWELL BRENT SIBLEY, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF FORREST B. SIBLEY, G.S., BY AND THROUGH HIS

NEXT FRIEND, GEORGANNE M. SIERCKS, GEORGANNE M. SIERCKS, JOAN M. SMEDINGHOFF, MARK T. SMEDINGHOFF, MARY BETH SMEDINGHOFF, REGINA C. SMEDINGHOFF, THOMAS SMEDINGHOFF, JAN MARIE HURNBLAD SPARKS, GARRY LEE SPARKS, JANE SPARKS, ZACHARY DOUGLAS SPARKS, LISA MARTINUSEN, MARIE SENTINA MIELKE, ANNETTE SPEHAR, JACOB LOUIS SPEHAR, LUKE SPEHAR, PATRICK SPEHAR, MITCHELL L. STAMBAUGH, CHARLES WESLEY STRANGE, III, CHARLES WESLEY STRANGE, KATELYN MARIE STRANGE, GARRETT LAYNE FUNK, JOSHUA NICHOLAS SUST, ERIN NICOLE GOSS, TRECIA BROCK HOOD, WENDY SHEDD, FREDDIE DEWEY SUTTON, HARRIETT SUTTON, SUMMER BREANNE SUTTON, DIANE TIMONEY, GREGORY TIMONEY, RYAN GREGORY TIMONEY, FREDERICK ALLEN TOLON, ESTA SMITH, JIMMY SMITH, EMILY TORIAN, JOE TORIAN, NATHAN EWELL TORIAN, BRITTANY TAYLOR TOWNSEND, KEVIN TRIMBLE, CHRISTOPHER MICHAEL VAN ETTEN, CATHERINE KIMBERLY VAUGHN KRYZDA, C.C.V., BY AND THROUGH HER NEXT FRIEND, CATHERINE KIMBERLY VAUGHN KRYZDA, R.C.V, BY AND THROUGH HIS NEXT FRIEND, CATHERINE KIMBERLY VAUGHN KRYZDA, ROBERT MARTIN KAHOKULANI VICKERS, JR., ROBERT MARTIN KAHOKULANI VICKERS, SR., HORTENSE KAINOA WAINANI VICKERS, K.N.V., BY AND THROUGH HIS NEXT FRIEND, HORTENSE KAINOA WAINANI VICKERS, K.E.F.V., BY AND THROUGH HER NEXT FRIEND, HORTENSE KAINOA WAINANI VICKERS, K.M.G.V., BY AND THROUGH HER NEXT FRIEND, HORTENSE KAINOA WAINANI VICKERS, MARK MATTHEW KALEINANI VICKERS, MARY JANE VICKERS, VANCE MARSHALL KELIIOLANI VICKERS, MAKAHEA XHELILI, MICHELLE JOY KAPUNAHELEOKALANI YARBOROUGH, BARRY WELCH, LORRIA WELCH, ZACKARY WELCH, JEFFREY L. WHITE, SR., KYLE WHITE, MICHAEL WHITE, PAULA K. WHITE, MICHELLE CAROLINA ROTELLI, MARTHA CAROLINA SMITH, THOMAS ELMER WICKLIFF, BRIAN ANTHONY WILLIAMS, CLARENCE WILLIAMS, JR., ABRILL RENEE WILLIAMS, SAMANTHA SHERVON WILLIAMS, TALISA SHERVON WILLIAMS, MONA G. BETZEN, CODY WORLEY, GREGORY W. WORLEY, JAMES WAYNE WORLEY, MARK G. WORLEY, BAILY ZIMMERMAN, CHRIS LEE ZIMMERMAN, MICHELLE ZIMMERMAN, DANIEL LEE BROWN, KRISTINA BROWN, DANIEL EDWARD STAMPER, JR., CAMERON JAY STUART, KATY STUART, ADRIANA WAKELING, SETH WAKELING, ERIK SPARKS, WILLIAM MICHAEL BURLEY, LISA DESLAURIERS, A.T.P., BY AND THROUGH HER NEXT FRIEND, STEWART LAMAR PERRY, AARON WILLIAM PRESCOTT,

  Plaintiffs – Appellants

ADAM DAEHLING, SAMANTHA DAEHLING, G. F., BY AND THROUGH HIS NEXT FRIEND ERICA FOX, A. G., BY AND THROUGH HER NEXT FRIEND JULIE GREEN, E. G., BY AND THROUGH HER NEXT FRIEND JULIE GREEN, T. G., BY AND THROUGH HER NEXT FRIEND JULIE GREEN, J. H., BY AND THROUGH HIS NEXT FRIEND ERIC. M. HUNTER, K. H., BY

AND THROUGH HER NEXT FRIEND ERIC M. HUNTER, L.A.E.L.B., BY AND THROUGH HER NEXT FRIEND, NATASHA BUCHANAN, NATASHA BUCHANAN, S.L.L.B., BY AND THROUGH HER NEXT FRIEND NATASHA BUCHANAN, SPENCER DANA PROVOST, KATRINA M. REEVES, H. R., BY AND THROUGH HER NEXT FRIEND RANDY RISTAU, D.R., BY AND THROUGH HIS NEXT FRIEND, MELISSA RODRIGUEZ, RODZIE ERFREN RODRIGUEZ, C.E.S., BY AND THROUGH HER NEXT FRIEND, CHARLES WESLEY STRANGE, KEVIN WILLIAMS,

Plaintiffs,

v.

DEUTSCHE BANK AKTIENGESELLSCHAFT, DEUTSCHE BANK TRUST COMPANY AMERICAS, STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, STANDARD CHARTERED BANK (PAKISTAN) LIMITED, DANSKE BANK A/S,

Defendants - Appellees,

DEUTSCHE BANK UK, DEUTSCHE BANK AG, NEW YORK BRANCH, STANDARD CHARTERED BANK LIMITED, STANDARD CHARTERED BANK, DUBAI MAIN BRANCH, DANSKE MARKETS INC., DEUTSCHE BANK AG, DUBAI BRANCH, PLACID NK CORPORATION, DBA PLACID EXPRESS, WALL STREET EXCHANGE LLC,

Defendants.

_____

## CORPORATE DISCLOSURE STATEMENT

*Amici curiae* certify that they have no outstanding shares or debt securities in the hands of the public, and do not have a parent company. No publicly held company has a 10% or greater ownership interest in *amici curiae.*

Date:  May 18, 2023

                                        */s/ Lee Wolosky*___
                                        Lee Wolosky

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES .................................................................... iii

STATEMENT OF INTEREST ...................................................................1

SUMMARY OF ARGUMENT .................................................................2

ARGUMENT ...................................................................................4

I.     This Is An Important Case That Will Have Ramifications For Other
       ATA Cases, Including *Bonacasa*.......................................................4

II.    This Court Should Hold That The Fatima Allegations State A Claim
       For JASTA Aiding And Abetting........................................................7

       A.     The Fatima Allegations Establish General Awareness. ......................8

       B.     The Fatima Allegations Establish Substantial Assistance. .................13

CONCLUSION .................................................................................16

CERTIFICATE OF COMPLIANCE ....................................................................18

CERTIFICATE OF SERVICE .................................................................19

.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonacasa v. Standard Chartered PLC.,*
  No. 22 Civ. 3320, 2023 WL 2390718 (S.D.N.Y. Mar. 7, 2023)................*passim*

*Halberstam v. Welch,*
  705 F.2d 472 (D.C. Cir. 1983).............................................................................15

*Henkin v. Kuveyt Turk Katilim Bankasi A.S.,*
  495 F. Supp. 3d 144 (E.D.N.Y. 2020), *appeal dismissed and
  remanded,* No. 21-513, 2022 WL 18861857 (2d Cir. Sept. 29,
  2022)..........................................................................................................................8

*Honickman v. BLOM Bank SAL,*
  6 F.4th 487 (2d Cir. 2021) ...........................................................................8, 11

*Kaplan v. Lebanese Canadian Bank, SAL,*
  999 F.3d 842 (2d Cir. 2021) ...................................................................8, 9, 14

*Twitter, Inc. v. Taamneh,*
  No. 21-1496, 2023 WL 3511531 (U.S. May 18, 2023)............. 4-5, 8, 13, 14, 15

*Wultz v. Islamic Republic of Iran,*
  755 F. Supp. 2d 1 (D.D.C. 2010)...................................................................7, 9

**Rules**

Fed. R. App. P. 29 ....................................................................................................1

## STATEMENT OF INTEREST[1]

*Amici Curiae* Diana Bonacasa, Vincent Bonacasa, Raquel Bonacasa, Barbara Rosendahl, Jeffrey Muncy, Gilbert Russell, Abigail Russell, Sarah Russell, Noemi Russell, Benjamin Russell, Nathanael Russell, Debbie Williams, and Chelsea Mangano (collectively, the "*Bonacasa* Plaintiffs" or "*amici*") are plaintiffs in the pending case of *Bonacasa et al. v. Standard Chartered PLC et al.*, No. 22-cv-03320 (S.D.N.Y.) (Ramos, J.).

Like Plaintiffs-Appellants ("Plaintiffs") in the instant case, *amici* brought an action under the Anti-Terrorism Act, 18 U.S.C. 2333(a) (the "ATA"), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, § 2, 130 Stat. 852 ("JASTA"), against Standard Chartered Bank ("SCB"). Both *amici* and Plaintiffs allege that SCB aided and abetted an al-Qaeda-led network (the "al-Qaeda Terror Syndicate") by providing banking services to the Fatima Group, which supplied the calcium ammonium nitrate ("CAN") used in the improvised explosive devices ("IEDs") responsible for the vast majority of American IED casualties in Afghanistan. In March 2023, the district court denied SCB's motion to dismiss

---

[1] No party's counsel authored this brief in whole or in part, and no money intended to fund preparing or submitting this brief was contributed by a party or party's counsel or anyone other than *amici*, its members, or its counsel. *See* Fed. R. App. P. 29.

*Bonacasa*, finding the ATA claims to be well-pleaded. *See Bonacasa v. Standard Chartered PLC*, No. 22 Civ. 3320, 2023 WL 2390718 (S.D.N.Y. Mar. 7, 2023).

Given the similarities between *amici*'s ATA claims and those of Plaintiffs in this case, *amici* have a strong interest in the outcome of this case.

## SUMMARY OF ARGUMENT

*Amici* write to provide this Court with additional context concerning a narrow but important piece of the *Wildman* case, referred to herein as the "Fatima Allegations."

The theory of liability in *Bonacasa* is that SCB had actual knowledge that it was aiding and abetting terrorist attacks through its provision of financial services to Fatima. Fatima is a rogue Pakistani company that produces and distributes fertilizers, which it knows are used in al-Qaeda's IEDs. In January 2013, as part of their efforts to disrupt the IED supply chain, U.S. government officials took the *extraordinary* step of meeting with SCB's senior executives, during which U.S. officials informed SCB in clear and certain terms that the bank was providing material support to the company supplying al-Qaeda's bombs. U.S. officials asked SCB to stop providing financial services to Fatima. SCB did not. Instead, SCB knowingly continued to provide Fatima with financial services, foreseeably resulting in tragic terrorist attacks that killed U.S. soldiers in Afghanistan.

While their complaint in *Wildman* covers other facets of aid to terrorists and alleges misconduct by banks other than SCB, Plaintiffs and *amici* share in common the allegations against Fatima. Plaintiffs and *amici* both allege that SCB knowingly aided and abetted the al-Qaeda Terror Syndicate by providing financial services to Fatima and with actual knowledge of Fatima's role in manufacturing the precursors for the bombs used by al-Qaeda in Afghanistan.

The district court in *Bonacasa* correctly found that the Fatima Allegations are unique amongst ATA cases. It is a rare case, that court explained, in which "a plaintiff alleges that a defendant-bank had *actual* knowledge of its role in aiding and abetting the harmful activities of a terrorist scheme [] because government officials told it so." *Bonacasa*, 2023 WL 2390718, at *13 (emphasis in original). In other words, per the government's own telling, SCB learned from the U.S. government that it was assisting al-Qaeda in making IEDs but chose to continue to financially service Fatima anyway. Under these well-pleaded facts, the *Bonacasa* court properly denied SCB's motion to dismiss.

The district court's contrary decision in the instant appeal, *Wildman*, should be reversed.[2] The Fatima Allegations make up a small but important part of the district court's decision, and it was incorrect. Resolving the Fatima Allegations

---

[2] *Amici* take no position as to allegations in the *Wildman* complaint other than the Fatima Allegations.

cursorily, the district court misstated the facts alleged and misapplied the law. Most significantly, as Judge Ramos in *Bonacasa* explained, the district court in *Wildman* ignored the unique information conveyed to SCB by U.S. officials during the January 2013 meeting—that, in effect, SCB was aiding and abetting a terror campaign—and SCB's conscious decision in the aftermath of this briefing to continue to provide banking services to Fatima.

In light of these unique facts, presumed to be true for purposes of the motion to dismiss, Plaintiffs in *Wildman*, like the *Bonacasa* Plaintiffs, have stated a valid claim against SCB.

## ARGUMENT

### I.    This Is An Important Case That Will Have Ramifications For Other ATA Cases, Including *Bonacasa*.

This Court's decision as to whether Plaintiffs' Fatima Allegations were properly dismissed will have significant implications for other ATA cases, including *Bonacasa*.

In *Bonacasa*, the district court denied SCB's motion to dismiss *amici*'s ATA claims, finding that *amici* properly pleaded that SCB knowingly aided and abetted Fatima in facilitating acts of international terrorism. JASTA aiding-and-abetting liability requires that SCB was generally aware of its role in the overall illegal or tortious activity; and knowingly provided substantial assistance to Fatima, who in turn performed a wrongful act that caused an injury. *See generally Twitter, Inc. v.*

*Taamneh*, No. 21-1496, 2023 WL 3511531 (U.S. May 18, 2023). The district court properly found both elements well-pleaded.

As to knowledge, the court cited *amici*'s allegations that SCB "knew that it was playing a role in the IED-making operations of al-Qaeda and the Syndicate," because "U.S. officials explicitly told Standard Chartered executives at a meeting in New York" and "the press covered Fatima's actions." *Bonacasa*, 2023 WL 2390718, at *10. Judge Ramos summarized *amici'*s allegations of actual knowledge as follows:

> In January 2013, General Barbero[3] met with senior executives of SCB at their New York branch to "warn that [Fatima] was helping to supply the Taliban with materials used in the manufacture of deadly homemade bombs." ¶ 148. The U.S. officials walked Standard Chartered's executives through the details of their investigation, explaining that "Fatima supplied vast quantities of the CAN fertilizer" to the Taliban. They gave the executives a map of the Fatima plants, along with pictures of bags of fertilizer seized from the Taliban and Haqqani network. *Id.* The U.S. officials further explained that IEDs were the most common cause of service members' deaths and that Fatima had refused to cooperate with U.S. authorities to curtail the supply of fertilizer to terrorists used to make IEDs. *Id.* The U.S. authorities also informed the executives that Standard Chartered's New York Branch and SCB Pakistan provided foreign exchange and export financing services to Fatima. *Id.* They therefore asked Standard Chartered to end its business relationship with Fatima. But Standard Chartered did not. ¶ 150. As General Barbero later said, Standard Chartered "enabled" the Syndicate. Doc. 22-3 at 3.

---

[3] In 2006, the Department of Defense created the Joint IED Defeat Organization ("JIEDDO"). Lieutenant General Michael D. Barbero served as Director of JIEDDO from 2011 through 2013 and attended the briefing with SCB in that capacity. Complaint ("*Bonacasa* Compl.") ¶¶ 13, 19, 118, *Bonacasa*, No. 22-cv-03320 (S.D.N.Y. Apr. 22, 2022), ECF No. 1.).

*Id.* Judge Ramos also favorably cited *amici*'s allegations that SCB had "general awareness" of its "role in Fatima's unlawful activities, which enabled the production of IEDs and attacks on American servicemen," given extensive press coverage:

> An Associated Press article from 2011 described the IED problem as one where "the main ingredient of the homemade bombs" was coming from "a single company in Pakistan." ¶ 141. A 2012 article published in the Khaama Press Agency, which was Afghanistan's largest online news source at the time, explicitly mentioned that the "Pentagon's top counter-IED official" explained that "70% of the IEDs used in Afghanistan were made from a common agricultural fertilizer produced in Pakistan." ¶ 143. The article went on to mention that Fatima was responsible for this production, and that the official thought Fatima had "not been cooperative." ¶ 143. Another 2012 article, published by The Washington Post, summarized the IED proliferation issue, stating "[a]lmost all [CAN] comes from two big fertilizer plants in Pakistan, both owned by the Fatima Group." ¶ 144. And in December 2012, General Barbero testified before the U.S. Senate's Foreign Relations Committee, explaining the problem and specifically mentioning Fatima's role in providing CAN to the Syndicate. ¶ 147; Doc. 22-2.

*Id.*

"Taken together," Judge Ramos reasoned, *amici*'s allegations of actual knowledge (from direct communications with the U.S. government) and general knowledge (from press reporting) "make it plausible that [SCB] was aware of Fatima's role—and thus its own role—in supplying the Syndicate with ingredients to IEDs." *Id.* The *Bonacasa* court explained that both types of knowledge suffice to establish general awareness; but actual knowledge of the type SCB is alleged to have had is rare and clearly sufficient even to support a claim of primary liability under

6

the ATA. *Id*. at *13 (citing *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010)).

Judge Ramos also correctly held that *amici* alleged "substantial assistance." *Id*. at *13-14. "[T]he nature of [SCB's] support—significant financial services—was indisputably important to Fatima, including dollar clearing services, daily banking services, and loans." *Id*. at *13 (internal citations and quotation marks omitted). The amount and duration of assistance was significant: SCB "provided Fatima with at least twenty-five million dollars in loans" and maintained an active "relationship with Fatima" starting in 2001 and continuing through the time "when the Syndicate killed Plaintiffs' family members." *Id.* at *14. And SCB was well aware that its services provided Fatima and the Syndicate support; "it was told as much in a face-to-face meeting with a U.S. Army General." *Id.*

## II. This Court Should Hold That The Fatima Allegations State A Claim For JASTA Aiding And Abetting.

The district court's contrary finding in *Wildman*, addressing substantially similar allegations against Fatima, must be reversed. Devoting just over two pages of a 61-page decision to the Fatima Allegations, the district court's dismissal was based on an erroneous application of the ATA. Dkt. 90, Memorandum and Order ("*Wildman* Op.") (E.D.N.Y. Dec. 29, 2022).

A.    **The Fatima Allegations Establish General Awareness.**

This Court has held that a complaint satisfies the "general awareness" element of a JASTA aiding-and-abetting claim if it pleads that the defendant is "generally aware of its role in an overall illegal or tortious activity at the time [it] provides the assistance." *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 496 (2d Cir. 2021) (internal marks and citations omitted); *see also Twitter*, 2023 WL 3511531, at *10. This does not require that the defendant be "aware of its role in the specific act that caused the plaintiff's injury," only that it "be *generally* aware of its role in an overall illegal activity from which the act that caused the plaintiff's injury was *foreseeable*." *Honickman*, 6 F.4th at 496 (some emphasis added); *Twitter*, 2023 WL 3511531, at *8-9 (aider and abettor responsible for reasonably foreseeable acts in connection with aid); *see also Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 863 (2d Cir. 2021) ("general awareness" standard is "less demanding" than an "awareness" standard would be).

In the typical JASTA case, the "general awareness" inquiry focuses on "warning signs and red flags about [a defendant's] customers" that would have placed a defendant on notice that it was assisting in illegal activity from which the requisite "awareness" may be plausibly inferred. *Henkin v. Kuveyt Turk Katilim Bankasi A.S.*, 495 F. Supp. 3d 144, 155 (E.D.N.Y. 2020), *appeal dismissed and remanded*, No. 21-513, 2022 WL 18861857 (2d Cir. Sept. 29, 2022). For example,

in *Kaplan*, this Court found that the plaintiffs stated an ATA claim by "describ[ing] a dozen published English-language articles that recounted the connection between Hizbollah" and the bank's customers. 999 F.3d at 850, 865 (concluding these allegations were "sufficient to permit the inference" of general awareness).

The Fatima Allegations go *far beyond* an inference of general awareness. There was extensive press coverage of Fatima's role in supporting terrorist attacks, to be sure. But *amici* in *Bonacasa*, and Plaintiffs in this case, also alleged SCB's actual knowledge by virtue of JIEDDO's specific warnings to SCB that its client, Fatima, "was helping to supply the Taliban with materials used in the manufacture of deadly homemade bombs." *Bonacasa*, 2023 WL 2390718, at *13 (quoting *Bonacasa* Compl. ¶ 148). In other words—as in *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010)—SCB was specifically informed by the U.S. government that it was aiding and abetting terrorist attacks on U.S. service members. It is hard to envision ATA scienter allegations more specific, and more detailed, than those here.

The district court dismissed these allegations as insufficient, characterizing the SCB-U.S. government meeting as informing SCB only "that a small portion of Fatima and Pakarab's products was being misused."[4] *Wildman* Op. at 44. The district

---

[4] Pakarab refers to Pakarab Fertilizers Limited, a Fatima subsidiary that produces CAN.

court's holding is contradicted by the alleged facts. Plaintiffs and *amici* both allege that U.S. officials:

- informed SCB that Fatima supplied the ammonium nitrate used in 80% of the explosives used in Afghanistan, *see Wildman* Am. Compl.[5] ¶¶ 14, 529; *Bonacasa* Compl. ¶¶ 149, 515;

- provided SCB with detailed evidence and casualty statistics, *see Wildman* Am. Compl. ¶ 529; *Bonacasa* Compl. ¶ 149;

- advised SCB that terrorist attacks on U.S. service members would be the inevitable consequence of its continued assistance to Fatima, *see Wildman* Am. Compl. ¶ 592; *Bonacasa* Compl. ¶¶ 149-150, 216; and

- urged SCB to stop providing financial services to Fatima, *see Wildman* Am. Compl. ¶ 505; *Bonacasa* Compl. ¶ 149.

As the court in *Bonacasa* held, these allegations—which must be presumed as true—go well beyond what is required to establish general awareness under this Court's precedent.

The district court in *Wildman* reached a contrary conclusion by making two related errors: (1) refusing to credit the allegations in the complaint and drawing inferences in Plaintiffs' favor; and (2) drawing impermissible inferences in SCB's favor at the pleading stage. Only these errors allowed the district court to embrace the implausible conclusion that JIEDDO took the highly unusual step of briefing a bank about an IED network responsible for the deaths and injuries sustained by

---

[5] Dkt. 38, Amended Complaint ("*Wildman* Am. Compl.") (E.D.N.Y. Feb. 26, 2022).

hundreds of American service members, despite apparently concluding that the bank had only a remote and inconsequential role in assisting that network.

The district court in *Wildman* also concluded that SCB could not have known of Fatima's unlawful activity because Fatima did not "directly suppl[y] [foreign terrorist organizations, or] FTOs with fertilizer," there was "no allegation that either Fatima or Pakarab was 'controlled' by an FTO," and Fatima was not alleged to be "closely intertwined" with al-Qaeda. *Wildman* Op. at 43-44 (citation omitted). But the crux of the "general awareness" inquiry is foreseeability. *Honickman*, 6 F.4th at 496-97 (characterizing foreseeability as "central" to JASTA aiding-and-abetting liability). In a case in which "general awareness" depends on drawing inferences from warning signs and red flags, foreseeability may require alleging a closer link between the intermediary or front organization and principal tortfeasor. But here the court need not assess whether SCB made the connection between Fatima and the terrorist attacks at issue because the U.S. government explicitly told SCB officials of the link between its banking services, Fatima, and the murder of U.S. service members. There can be no serious dispute that, after that meeting, future attacks on U.S. service members were a foreseeable—if not inevitable—consequence of SCB's assistance to Fatima.

Even if more were required, the *Wildman* complaint also alleged, as did the *Bonacasa* complaint, that Fatima "deliberate[ly] suppl[ied] CAN fertilizer to

Syndicate agents, operatives, and fronts from 2009 through 2016." *Wildman* Am. Compl. ¶¶ 1075, 2041; *see Bonacasa* Compl. ¶¶ 111-114, 119-121, 127. Plaintiffs alleged that "[a]lmost all of the ammonium nitrate used in the Taliban's bombs comes from two big fertilizer plants in Pakistan, both owned by the Fatima Group." *Wildman* Am. Compl. ¶¶ 516-518; *see also Bonacasa* Compl. ¶ 144. And Plaintiffs alleged that Fatima: (1) knew that its fertilizer was responsible for most of the U.S. deaths in Afghanistan and was not being used for agricultural purposes; (2) repeatedly lied to the U.S. government about taking steps to curtail the flow of fertilizer to terrorists; and (3) continued to sell fertilizer to al-Qaeda-affiliated terrorist groups despite knowing of Afghanistan's ban on importing its fertilizer. *Wildman* Am. Compl. ¶¶ 516-518, 529, 1075; *Bonacasa* Compl. ¶¶ 127, 148-150.

In fact, Plaintiffs and *amici* alleged that Fatima was acting intentionally specifically because it was being influenced by rogue elements from Pakistan's ISI (intelligence service), which aimed to encourage al-Qaeda-affiliated terrorist groups in Afghanistan (like the Haqqani Network). *Wildman* Am. Compl. ¶¶ 518-524; *see Bonacasa* Compl. ¶¶ 144-146. All of these allegations went wholly unmentioned by the district court in *Wildman*.

In addition, Plaintiffs and *amici* alleged SCB's pervasive disregard for the rule of law. *See Wildman* Am. Compl. ¶¶ 444-504, 838-920; *Bonacasa* Compl. ¶¶ 158-178. The district court in *Bonacasa* found it unnecessary to rely on these

12

allegations because the Fatima Allegations, standing alone, establish a claim for relief. But if more were required, then both Plaintiffs and *amici* have alleged that SCB frequently and flagrantly provided assistance to terrorists and their allies despite ample warnings from many governments, including our own, that its conduct was dangerous. Taking those allegations as true and drawing appropriate inferences from them, it is plausible that SCB knew it was playing a role in illegal activities that foreseeably risked acts of terrorism by providing assistance to Fatima.

Consistent with Judge Ramos's well-reasoned decision in *Bonacasa*, *amici* thus urge this Court to hold that Plaintiffs' Fatima Allegations satisfy the "general awareness" prong of a JASTA aiding-and-abetting claim.

### B. The Fatima Allegations Establish Substantial Assistance.

Plaintiffs' Fatima Allegations also satisfy the "substantial assistance" prong of a JASTA aiding-and-abetting claim. As the Supreme Court confirmed in *Twitter*, six factors are relevant to that inquiry: (1) the nature of the act encouraged; (2) the amount of assistance given by defendant; (3) defendant's presence or absence at the time of the tort; (4) defendant's relation to the principal; (5) defendant's state of mind; and (6) the period of defendant's assistance. 2023 WL 3511531, at *8. These factors, founded in the common law, call for "balancing … between the nature and

amount of assistance on the one hand and the defendant's scienter on the other." *Id.* at *11.

Judge Ramos in *Bonacasa* carefully dissected each of these factors and found them well satisfied. The district court in *Wildman*, by contrast, reached a contrary conclusion that cannot be reconciled with the facts alleged.

Most notably, the district court summarily dismissed SCB's provision of "foreign exchange and export finance services" and "letters of credit" to Fatima as "routine banking services." *Wildman* Op. at 42; *see id.* at 45. Providing "routine services" to a terrorist organization, directly or indirectly, is not a defense to an ATA claim. *See Kaplan*, 999 F.3d at 858 (there is no "routine" conduct defense as a matter of law). In any event, there is nothing "routine" about SCB continuing to provide financial services to Fatima *after* the U.S. government advised that Fatima was supplying fertilizer used by terrorists to kill Americans and urged SCB to stop providing financial services to Fatima. *Wildman* Am. Compl. ¶ 529(vii); *Bonacasa* Compl. ¶ 149(vi). As alleged in both *Wildman* and *Bonacasa*, Fatima could not produce its principal product for terrorists without the ongoing financial services from its "MAJOR BANKER[ ]," *Wildman* Am. Compl. ¶ 526; *Bonacasa* Compl. ¶ 140, which is precisely the reason the U.S. government made the highly unusual decision to intervene.

14

Thus, by comparison, with respect to the sole aiding and abetting allegation in *Twitter* involving financial services, the Supreme Court faulted the complaint for alleging "nothing about the amount of money that Google supposedly shared with ISIS, the number of accounts approved for revenue sharing, or the content of the videos that were approved." *Twitter*, 2023 WL 3511531, at *29. This is on the opposite end of the substantial-assistance continuum from the facts alleged here. As alleged, Fatima relied on SCB's financial servicing to continue its operations, including its production of CAN, much like Halberstam relied on the aider-and-abettor's "assistance in laundering the stolen goods and transforming them into usable wealth." *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). And because SCB was directly informed by the U.S. government of Fatima's production of CAN used by al-Qaeda affiliates in the murder of U.S. service members, SCB was not simply providing services at arms' length without scienter. Rather, by virtue of SCB's knowledge that its services were critical to Fatima's continued operations, Plaintiffs and *amici* have stated a claim that SCB consciously and culpably participated in the tort—murder—facilitated by Fatima.

The district court in *Wildman* also erred in disregarding allegations about the nexus between SCB's financial services to Fatima and Fatima's assistance to al-Qaeda affiliates. Plaintiffs alleged—but the district court ignored—that SCB provided millions of dollars of financial services to Fatima. *See, e.g.*, *Wildman* Am.

Compl. ¶¶ 446, 1074, 1080. The district court inexplicably concluded that the "Complaint does not allege any facts that would allow the Court to infer that the alleged nexus between these banking services and the terrorist activity is plausible." *Wildman* Op. at 45. But, as Judge Ramos concluded, "it is clear" that the "significant" support provided by SCB "stimulated CAN production: from 2011 to 2016, the Syndicate sourced tens of thousands of tons of CAN to make IEDs from Fatima's two fertilizer plants in Pakistan." *Bonacasa*, 2023 WL 2390718, at *14 (internal quotation marks and citation omitted). And as Plaintiffs alleged here, Fatima's supply of CAN to the Syndicate corresponded with a sharp uptick in deaths by IED. *Wildman* Am. Compl. ¶¶ 529, 531-532.

Thus, consistent with Judge Ramos's decision in *Bonacasa*, the Fatima Allegations satisfy both the "general awareness" and "substantial assistance" prongs of JASTA.

## CONCLUSION

The judgment below should be reversed.

Dated: May 18, 2023                Respectfully submitted,

                                   /s/ Lee Wolosky

                                   Lee Wolosky
                                   JENNER & BLOCK LLP
                                   1155 Avenue of the Americas
                                   New York, NY 10036
                                   (212) 891-1600
                                   lwolosky@jenner.com

16

Andrianna D. Kastanek
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60653
(312) 222-9350
akastanek@jenner.com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(G), and Local Rules 32.1(a)(4)(A) and 29.1(c), I certify that this brief complies with the length limitation because this brief contains 3,686 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

Pursuant to Fed. R. App. P. 32(a)(5) and (6), and Local Rule 32.1, this brief complies with the typeface and type style requirements because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.


Dated: May 18, 2023                          /s/ Lee Wolosky
                                             Lee Wolosky

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of May, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Lee Wolosky
Lee Wolosky