# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-956-7676
WWW.SULLCROM.COM

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*

NEW YORK • LOS ANGELES • PALO ALTO
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

June 9, 2025

<u>Via ECF</u>

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    <u>*Wildman* v. *Deutsche Bank Aktiengesellschaft*, No. 23-132</u>

Dear Ms. Wolfe:

Pursuant to Federal Rule of Appellate Procedure 28(j), I write to alert the Court to the Supreme Court's decision in *Smith & Wesson Brands, Inc.* v. *Estados Unidos Mexicanos*, 605 U.S. __ (2025). *Smith & Wesson* confirms that plaintiffs have failed to meet their high burden to plead an aiding-and-abetting claim.

In *Smith & Wesson*, Mexico claimed that gun manufacturers aided and abetted unlawful sales of guns to Mexican drug cartels. Among other things, the complaint alleged that the manufacturers "suppl[ied] firearms to retail dealers whom they know illegally sell to Mexican drug traffickers," and "failed to impose … controls on their distribution networks that would prevent illegal sales." Op. 4-5.

The Court unanimously found those allegations insufficient because they did not evince the manufacturers' culpable "participat[ion] in" unlawful sales, "as in something that [they] wish[ed] to bring about" and "[sought] by [their] action to make succeed." Op. 10. Rather, the complaint alleged only that the "manufacturers treat rogue dealers just the same as they do law-abiding ones." *Id.* at 11. Similarly, the allegations that manufacturers could have done more amounted to "omissions" and "inactions" that "are rarely the stuff of aiding-and-abetting liability." *Id.* at 13. As in *Twitter* v. *Taamneh*, the manufacturers'

Catherine O'Hagan Wolfe                                                                                              -2-

"nonfeasance" or "indifferen[ce]" was "not enough to hold the companies responsible." *Id*. (citing 598 U.S. 471, 489 (2023)).

      Plaintiffs' claims here fail for the same reasons. At most, plaintiffs allege that the defendant-banks provided routine services to "rogue" customers and could have done more to stop unlawful acts. Like in *Smith & Wesson*, defendants did not "directly supply" terrorists or otherwise "attend to the[ir] conduct." *See* Op. 11. Here too, such "passive nonfeasance" does not support aiding-and-abetting liability.

      That is also apparent for plaintiffs' fertilizer claims against Standard Chartered Bank. Like the guns in *Smith & Wesson*, Fatima's fertilizer was "bought by many ordinary consumers," but also by "some number of unidentified rogue" actors who misused "about one percent" of it. Op. 10, 14; Am. Compl. ¶ 515. Under *Smith & Wesson*, Fatima did not aid and abet those attacks; *a fortiori*, neither did Fatima's bank.

      Sincerely,

      */s/ Jeffrey B. Wall*
      Jeffrey B. Wall
      Sullivan & Cromwell LLP
      1700 New York Avenue, NW
      Washington, DC 20006
      (202) 956-7500
      wallj@sullcrom.com

      *Counsel for Standard Chartered Bank, Standard Chartered PLC, and Standard Chartered Bank (Pakistan) Limited*

cc:    All Counsel (via ECF)